# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# MACON DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | |
| **Plaintiff,** | : | |
| v. | : | 5:09-CV-198(CAR) |
| **$22,010.00 in U.S. CURRENCY,** | : | |
| **Defendant Property,** | : | |
| **ERROL BERNARD BELL,** | : | |
| **Claimant.** | : | |

## **ORDER ON PARTIES' MOTIONS FOR SUMMARY JUDGMENT**

Before the Court are the Government's Motion for Summary Judgment [Doc. 24] and Claimant Errol Bernard Bell's Motion for Summary Judgment [Doc. 31] in this case in which the Government seeks forfeiture of $22,010.00 in U.S. Currency pursuant to 21 U.S.C. § 881(a)(6). Both parties have filed timely responses [Docs. 37 and 40], and the Government has filed a timely reply in support of its motion [Doc. 41]. Because genuine issues of material fact remain to be decided, summary judgment is not appropriate at this time. Accordingly, the Government's Motion for Summary Judgment [Doc. 24] and Claimant Bell's Motion for Summary Judgment [Doc. 31] are **DENIED.**

### **I. BACKGROUND**

On December 12, 2008, Bell was stopped on Interstate 16 by officers of the Twiggs County Sheriff's Office for traffic violations. At that time, the officer who initiated the traffic stop observed

1

Bell acting nervously and sweating excessively. Another officer then conducted a sweep of the exterior of Bell's vehicle, using a dog trained to detect the odor of illegal narcotics ("K-9"). During the sweep, the K-9 gave a positive alert. The K-9 was then placed inside the vehicle, at which time it gave a positive alert to a fast food bag in the backseat. Inside of that bag officers discovered two plastic bags, each containing a large amount of United States currency. The officers seized the funds.

At the Twiggs County Sheriff's Office, Bell answered questions about the source of the funds. He claimed that he received the funds in exchange for the sale of a vehicle to John Crawford. An officer called a phone number provided by Bell. The individual that answered the phone indicated that his name was not Crawford, that he did have a vehicle as described by Bell, but that he bought it new at least twenty years ago. The phone number provided by Bell was determined to belong to Joe Nathan Knight. While at the sheriff's office, a controlled sweep for the seized currency was also conducted. The currency was hidden in two separate locations, and the K-9 gave a positive alert to both locations.

The currency seized by Twiggs County Sheriff's Office was adopted by the Drug Enforcement Agency ("DEA") for administrative forfeiture. On March 16, 2009, Bell filed a Notice of Claim and a Petition for Remission with the DEA. In the Notice of Claim and Petition for Remission Bell indicated that the seized currency was proceeds from the sale of a 1971 Chevrolet Chevelle to Patrick Smith on November 12, 2008, and that the title was delivered to Mr. Smith at the time of the sale. In support of that claim, Bell submitted a copy of a Bill of Sale to Patrick Smith for a 1971 Chevrolet Chevelle, VIN: 136671K144363, dated November 12, 2008.

On April 27, 2009, the United States Attorney's Office, Middle District of Georgia, requested that the DEA investigate the merits of Bell's petition, and submit a report and

recommendation on the matter. On May 1, 2009, Special Agent Lyle of the DEA sent a DEA Administrative Subpoena to the Georgia Department of Revenue/Motor Vehicles requesting all documents related to title applications and records for the 1971 Chevrolet Chevelle, VIN:136671K144363, for both Bell and Patrick. The subpoena response revealed that there were no Certificates of Title or license plate records for the 1971 Chevrolet Chevelle, VIN: 136671K144363. Special Agent Lyle then requested an interview with Bell and the production of documents in support of Bell's Petition for Remission. After receiving no further information from Bell, Special Agent Lyle issued a report recommending that Bell's petition be denied.

On June 12, 2009, the United States Attorney's Office filed a Verified Complaint for Forfeiture against the seized currency, instituting a civil forfeiture action in rem under 21 U.S.C. § 881(a)(6). On June 16, 2009, Bell was served with copies of the Notice of Forfeiture, Verified Complaint for Forfeiture, and Warrant of Arrest in Rem. On July 9, 2009, Bell filed a Claim asserting his interest in the Defendant Property. On July 12, 2009, Bell filed an Answer to the Verified Complaint.

During discovery, Bell refused, based on his Fifth Amendment privilege against self incrimination, to answer questions related to the Bill of Sale, the sale of the car, his prior possession of the car, or events on the day of the traffic stop. Bell did, however, admit to a prior arrest and conviction for cocaine trafficking in 2005.

After the close of discovery both parties made a timely motion for summary judgment.

## II. DISCUSSION

A.     Summary Judgment Standard

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment must be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986). A genuine issue of material fact only exists when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 2511 (1986). Thus, summary judgment must be granted if there is insufficient evidence for a reasonable jury to return a verdict for the nonmoving party or, in other words, if reasonable minds could not differ as to the verdict. See id. at 249-52, 106 S. Ct. at 2511-12. When ruling on a motion for summary judgment, the court must view the facts in the light most favorable to the party opposing the motion. Welch v. Celotex Corp., 951 F.2d 1235, 1237 (11th Cir. 1992).

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact" and that entitle it to a judgment as a matter of law. Celotex Corp., 477 U.S. at 323, 106 S. Ct. at 2553 (internal quotation marks omitted). If the moving party discharges this burden, the burden then shifts to the nonmoving party to go beyond the pleadings and present specific evidence showing that there is a genuine issue of material fact. See Fed. R. Civ. P. 56(e); see also Celotex Corp., 477 U.S. at 324-26. This evidence must consist of more than mere conclusory allegations or legal conclusions. See Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir. 1991).

 B. Civil Forfeiture Under 21 U.S.C. § 881

Section 881 of Title 21 of the United States Code provides for the forfeiture of certain property to the United States, including "[a]ll moneys . . . furnished or intended to be furnished by any person in exchange for a controlled substance . . . in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys . . . used or intended to be used to facilitate any violation of this subchapter." 21 U.S.C. § 881(a)(6). Civil forfeiture actions brought under 21 U.S.C. § 881(a)(6) are governed by the Civil Asset Forfeiture Reform Act of 2000 ("CAFRA"), Pub.L. No. 106-185, 114 Stat. 202, codified in part at 18 U.S.C. § 983. 18 U.S.C. § 983(i). Concerning the applicable burden of proof, CAFRA provides:

> In a suit or action brought under any civil forfeiture statute for the civil forfeiture of any property-
> 
> (1) the burden of proof is on the Government to establish, by a preponderance of the evidence, that the property is subject to forfeiture;
> 
> (2) the Government may use evidence gathered after the filing of a complaint for forfeiture to establish, by a preponderance of the evidence, that property is subject to forfeiture; and
> 
> (3) if the Government's theory of forfeiture is that the property was used to commit or facilitate the commission of a criminal offense, or was involved in the commission of a criminal offense, the Government shall establish that there was a substantial connection between the property and the offense.

18 U.S.C. § 983(c).

Thus, the Government must prove by a preponderance of the evidence that the funds seized were furnished or intended to be furnished in exchange for a controlled substance or proceeds traceable to such an exchange. The Government, however, need not "show a relationship between the property and a particular drug transaction–only that the property was related to some illegal drug transaction." United States v. $242,484.00, 389 F.3d 1149, 1160 (11th Cir. 2004) (en banc). In evaluating the evidence, the court must take "a common sense view to the realities of normal life

5

applied to the totality of the circumstances." Id. "Nevertheless, the Government is only entitled to summary judgment if the evidence is so one-sided that it authorizes only one conclusion; that is, that the seized property more likely than not constitutes drug proceeds." United States v. $183,791.00 in U.S. Currency, No. 1:06-CV-2791-JEC, 2009 WL 2957276, at *5 (N.D. Ga. Sept. 15, 2009).

C. Analysis of the Evidence

Although the Government has established several undisputed facts that tend to demonstrate a substantial connection between the seized funds and narcotics activity, factual disputes regarding whether Bell demonstrated a legitimate source for the funds preclude summary judgment at this time.

Before discussing the factual disputes regarding the alleged legitimate source for the seized funds, the Court notes two undisputed facts that tend to prove a substantial connection between the funds and narcotics activity. First, the money seized prompted a positive alert from a trained K-9. The Eleventh Circuit has held that a positive alert by a K-9 trained to detect narcotics is relevant to the issue of whether the money to which the dog alerts has likely come into contact with narcotics in the recent past. $242,480.00, 389 F.3d at 1166. Here, undisputed evidence demonstrates that the money seized was found in a fast food bag in the truck driven by Claimant Bell. A K-9, trained to detect the odor of marijuana, methamphetamine, heroin, cocaine, and crack cocaine, alerted to the bag. The K-9 also alerted to the money during a controlled sweep performed at the Twiggs County Sheriff's Office. Second, Claimant Bell has a prior history of drug trafficking. A claimant's narcotics related criminal history is also probative of a substantial connection between the seized currency and narcotics activity. United States v. $52,000, More or Less, in U.S. Currency, 580 F. Supp. 2d 1036, 1042 (S.D. Ala. 2007); United States v. U.S. Currency Totaling $101,207.00, No.

6

1:01-CV-162, 2007 WL 4106262, at *6 (S.D. Ga. Nov. 16, 2007). The undisputed facts show that Bell was on probation following his arrest and conviction on cocaine trafficking charges in 2005.

Nevertheless, Claimant Bell has produced sufficient evidence to create a genuine issue of material fact as to whether the seized funds were obtained from a legitimate source. Many courts have noted that lack of a legitimate source for seized funds is probative of a connection between the funds and narcotics activity. United States v. $80,633.00 in U.S. Currency, No. 2:05-CV-1086-WKW, 2008 WL 1808328, at *6 (M.D. Ala. Apr. 21, 2008) (finding the overwhelming lack of evidence of legitimate source the "most persuasive factor"), aff'd by, 340 Fed. Appx. 579 (11th Cir. 2009); United States v. $74,700 in U.S. Currency, No. 2:06-CV-0736-WKW, 2008 WL 1805432, at *4 (M.D. Ala. Apr. 18, 2008) (finding lack of evidence of legitimate source of funds to be highly probative of substantial connection with illegal drug trafficking); $52,000.00, 508 F. Supp. 2d at 1042 ("In civil forfeiture cases, the absence of an apparent, verifiable, or legitimate source of substantial income is probative evidence of a substantial connection to illegal activity.").

Claimant Bell has introduced a theory explaining the presence of the $22,010, namely that the funds were proceeds from the sale of a car. In support of that, he has produced a Bill of Sale indicating that he sold a 1971 Chevrolet Chevelle to a Patrick Smith on November 12, 2008, for $31,000.

In response, the Government has produced evidence indicating that the Bill of Sale is not authentic and that Bell did not actually sell a 1971 Chevrolet Chevelle to Patrick Smith for $31,000. As part of his investigation, Special Agent Lyle sent an administrative subpoena to the Georgia Department of Revenue/Motor Vehicles requesting any title or license plate records for the vehicle identified in the Bill of Sale, a 1971 Chevrolet Chevelle, VIN: 136671K144363. The Department of Revenue indicated there were no title or license plate records for that vehicle.

In response to the Government's discovery requests, the only documentary evidence produced by Bell indicating that he ever owned the car in question was the Bill of Sale itself and several non-specific pictures of a Chevrolet Chevelle. Responding to the lack of title information, Bell asserted that a 1971 vehicle did not have to be titled in Georgia. However, in his Petition for Remission, Bell stated that he transferred title to the vehicle to Patrick Smith at the time of the sale.

Although Bell's evidence in support of the alleged sale is rather sparse, the Court concludes that the Bill of Sale, coupled with the photos, and his explanation for why no title exists for the car in question are at least sufficient to create a genuine issue of material fact as to whether he owned a 1971 Chevrolet Chevelle and whether the funds seized were the proceeds from the sale of such a car.

The Government points to Bell's inconsistent and implausible stories regarding the sale of the car to undermine the evidence of the sale. Evidence of inconsistent statements is probative of whether the seized funds are substantially connected to narcotics activity. $242,484.00, 389 F.3d at 1164. At the time of the traffic stop, Bell told officers that the money came from the sale of a car to a John Crawford and provided a phone number for John Crawford. When an officer called that number, the man who answered the phone indicated that his name was not Crawford, that he did own a car like the one described, but that he bought it new twenty to twenty-five years ago. In his Notice of Claim and Petition for Remission, Bell gave a new identity for the buyer of the car, indicating that the currency was proceeds from the sale of 1971 Chevelle to Patrick Smith on November 12, 2008. In his response to the Government's Interrogatories, Bell stated that the money was from the proceeds of the sale and that it was inside the vehicle because he was driving home from the sale. But Bell was pulled over on December 12, a month after the date of sale indicated on the Bill of Sale and in his Petition for Remission. Finally, at his deposition, Bell stated that he

did not know Patrick Smith, that Patrick Smith was not present at the time of the sale, and that he negotiated the sale of the car through an individual named "G" – an individual that he had not named in any prior filings.

The inconsistencies stand as further independent evidence of a substantial connection between the seized funds and narcotics activity, but that is a separate question from whether they so undermine Bell's evidence of a legitimate source for the money as to leave no genuine factual disputes on that issue. Turning to that question, the Court concludes that although these inconsistencies raise serious questions regarding the credibility of Bell's story, they do not undermine Bell's evidence in support of his contentions to the point that there is no longer a genuine issue of material fact to be determined.

Finally, the Government points to Bell's refusal, based on his Fifth Amendment privilege against self incrimination, to answer questions related to the Bill of Sale, the sale of the car, or certain events on the day of the traffic stop. Claimants in a civil in rem forfeiture proceeding have a right to assert the Fifth Amendment privilege. United States v. Two Parcels of Real Property Located in Russell County, Ala., 92 F.3d 1123, 1129 (11th Cir. 1996). That choice, however, is not without consequences. In the Eleventh Circuit, "the trier of fact may take an adverse inference against the parties to a civil action refusing to testify on Fifth Amendment grounds." Id.

As with the inconsistencies of his story, Bell's invocation of the Fifth Amendment raises serious questions about the veracity of his story. Bell refused to answer questions regarding whether he shared utilities and other living expenses with his mother. He refused to answer questions regarding the events that happened on December 12, 2008, the day of the traffic stop, other than that he was returning from visiting family in Swainsboro, Georgia. In response to questions regarding how he came into possession of the car, when he bought, and how much he paid for it, Bell refused

9

to answer. Regarding Patrick Smith, Bell stated that he put the name Patrick Smith in the Bill of Sale at the request of "G" and that "G" actually paid him for the car, but that "G" and Patrick Smith were not the same person. But in response to specific questions regarding the Bill of Sale, Bell refused to answer whether he entered the handwritten portions of the Bill, whether he entered the VIN on the Bill, whether "G" was present when the Bill was completed, whether "G" signed the name Patrick Smith, what date the Bill of Sale was created, and whether he sold a 1971 Chevelle to Patrick Smith. Finally, regarding the discrepancy between the statement on the Petition for Remission that he transferred title to Patrick Smith on November 12 and Bell's later claim that no title existed for the car, Bell refused to answer whether he read the letter stating that he transferred the title on November 12 before signing it under penalty of perjury.

Bell's invocation of his Fifth Amendment privilege could allow a trier of fact to infer that Bell never owned the car in question, that the Bill of Sale was not created on November 12, that no counter-party was present when the Bill of Sale was created, and that no counter-party, whether it be "G" or Patrick Smith, signed the Bill of Sale. In short, a trier of fact could infer that the Bill of Sale was a sham. The adverse inference by itself, however, cannot be the "linchpin" of the summary judgment case. Id. at 1130. In this case, the adverse inference would be the primary, if not sole, basis for concluding that there is no legitimate source for the seized funds. That being the case, the adverse inference is not sufficient to demonstrate at the summary judgment stage that no genuine issues of material fact remain as to whether there is a legitimate source for the seized funds.

Because Bell has produced some evidence indicating a legitimate source for the funds, genuine issues of material fact still remain in this case as to whether the Government has established a substantial connection between the funds and narcotics activity. Accordingly, the Government's Motion for Summary Judgment must be denied.

In light of both the undisputed evidence produced by the Government tending to show a substantial connection between the seized funds and narcotics activity and the genuine issues of material fact regarding whether there was a legitimate source for the seized funds, Claimant Bell's Motion for Summary Judgment must be denied as well.

### III.  CONCLUSION

For the foregoing reasons, the Government's Motion for Summary Judgment [Doc. 24] and Claimant Bell's Motion for Summary Judgment [Doc. 31] are both **DENIED**.

**SO ORDERED**, this 19th day of November, 2010.

                                        S/  C. Ashley Royal_____
                                        C. ASHLEY ROYAL, JUDGE
                                        UNITED STATES DISTRICT COURT

bcw